Argued and submitted April 27, ballot title certified April 30, 1982

## BARTELS,
*Petitioner,*

*v.*

## PAULUS,
*Respondent.*

### (SC 28587)

645 P2d 1059

John Bartels, pro se, for the petition.

Stanton Long, Deputy Attorney General, for the respondent. With him on the memorandum were David Frohnmayer, Attorney General, William F. Gary, Solicitor General, John A. Reuling, Jr., Chief Counsel, Opinion Section, and Max Rae, Law Clerk.

Before Denecke, Chief Justice, and Lent, Linde, Peterson and Roberts, Justices.

PER CURIAM.

## PER CURIAM

A petition to initiate a state measure was filed with the respondent, Secretary of State, pursuant to ORS 250.045. Copies of the prospective petition were sent to the Attorney General, ORS 250.065(2), and that official provided a ballot title for the measure, ORS 250.065(3). In preparing that title, the Attorney General was governed by ORS 250.035, which provides:

"(1)  The ballot title of any measure to be initiated or referred shall consist of:

"(a)  A caption of not more than 10 words by which the measure is commonly referred to;

"(b)  A question of not more than 20 words which plainly states the purpose of the measure, and is phrased so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c)  A concise and impartial statement of not more than 75 words of the chief purpose of the measure.

"(2)  The ballot title shall not resemble, so far as probably to create confusion, any title previously filed for a measure to be submitted at that election."

Pursuant to ORS 250.085, John Bartels ("Petitioner") petitioned this court, seeking a different ballot title and alleging that the title provided by the Attorney General was insufficient and unfair for certain alleged reasons.[1] Petitioner happens to be coordinator of a drive to obtain signatures for another initiative measure concerning similar subject matter. We recently certified to the Secretary of State a title for that other measure.[2] *See Pacific*

---

[1] ORS 250.085(1) provides:

"Any person dissatisfied with a ballot title for an initiated * * * measure filed with the Secretary of State by the Attorney General * * * may petition the Supreme Court seeking a different title and stating the reasons *the title filed with the court* is insufficient or unfair." (Emphasis added)

Actually, the title is not "filed with the court" and under a strict reading of the statute there would be nothing for the court to consider; however, we have considered petitions under ORS 250.085(1) in the past and will consider this one. It would seem to be a simple housekeeping matter for the legislature to amend this statute to conform to reality.

[2] The title we certified for the other measure was:

"RENEWABLE ENERGY DEVELOPMENT AND CONSERVATION ACT

"QUESTION: Shall elected commission be created to sell bonds, lend

*Power & Light Co. v. Paulus,* 292 Or 826, 643 P2d 871 (1982).

The Attorney General provided the following title:

"CREATES ELECTED COMMISSION TO DEVELOP RENEWABLE ENERGY AND ACCOMPLISH CONSERVATION

"QUESTION: Shall elected commission with bonding authority be created to develop renewable energy, accomplish conservation and lend to public bodies, cooperatives?

"EXPLANATION: Creates elected commission to sell bonds; develop, buy, generate and distribute energy from renewable resources; and lend to public bodies and cooperatives for acquiring, constructing and operating renewable energy sources and distribution lines and systems. Commission would develop and control electricity use to accomplish conservation and renewable energy development. Compatibility of projects with environment taken into account. Commission could not develop nuclear or fossil fueled systems. Commission's property taxed. Commission assumes Department of Energy's powers."

■ Petitioner contends that that title is insufficient because it does not state that further legislation would be required to achieve the purposes of the measure. ORS 250.035(1)(b) and (c) command the Attorney General to state in the question and the explanation, respectively, the "purpose" and the "chief purpose" of the measure. That the measure may require further implementing legislation is not a purpose of the measure; therefore, the provided title is not insufficient or unfair in this respect.

■ Petitioner asserts that the provided title is defective for failure to state that some purposes of the measure are not achievable as the measure is drafted by its sponsors.

_____

for and develop renewable energy and conservation projects, and wholesale electricity?

"EXPLANATION: Creates elected commission authorized to sell bonds, develop renewable energy and conservation projects, operate energy projects, make secured loans for projects, wholesale electricity to consumer-owned utilities, and conduct related activities. Qualified projects of individuals, small businesses, and consumer-owned utilities preferred. Major projects require voter approval. Commission could not develop coal or nuclear plants, lend to investor-owned utilities. Requires protection of environment. Commission property subject to taxation. Appropriates startup funds, repayable with interest."

This assertion is directed to a claim of lack of consequence to the measure. As we said in *Kegg v. Paulus,* 282 Or 47, 50, 576 P2d 1255, 1256 (1978), in rejecting a ballot title challenger's contention that certain language must be added to show that the effect of the measure would be prohibition of some apparently desirable conduct:

> "The language encompasses petitioner's contention as to the consequences of the adoption of the amendment, rather than its provisions, and as such is, in our opinion, inappropriate for a ballot title and is better the subject for argument to members of the public concerning that which it is claimed will result if they should pass the proposed amendment."

The Attorney General is not required to speculate as to the consequences of passage of a measure in order to provide a title that is concise, impartial, and sufficient to state the measure's purpose.

■     Petitioner avers that the provided title fails to mention that the measure would transfer control over the Oregon Independent Energy Forecast from the Department of Energy to the commission to be created by the measure. The measure would transfer to the new commission all of the functions, powers and obligations of the Department of Energy. The final sentence of the explanation so states. Responsibility for the Forecast is but one of the Department of Energy's important functions. The title cannot be faulted for failure to single out one at the expense of the others.

■     Petitioner complains that the provided title twice mentions lending of money by the new commission. His argument seems to be that the measure, by its own terms, does not speak to authority to make loans. The power to make loans presently residing in the Department of Energy would be transferred to the new commission. To that extent, it would appear that a purpose of the measure is to provide for lending authority by means of the purchase by the commission of revenue bonds of public bodies and cooperatives for the purposes specified in the measure. The purchase of bonds is the lending of money.

■     Petitioner contends that the provided title is flawed in failing to note that only one type of energy conser-

vation program is possible under the measure without further legislation. This is partly a "lack of consequences" argument, which we reject for the same reasons we noted in *Kegg v. Paulus, supra.* The measure does provide that the commission is to utilize its authority to accomplish conservation of energy. Certainly, that is a purpose of the measure, and the provided title so states.

Finally, the petitioner correctly asserts that many of the words of the provided title are the same as those in the title we certified for the other measure to which we referred, *supra,* at footnote 2 and accompanying text. Petitioner contends this violates ORS 250.035(2), which provides that the ballot title for one measure shall not resemble the title of another measure "so far as probably to create confusion."

■ ■ Although the apparent purpose of this statutory proscription is to prevent "confusion," it is not so clear what it is that should not be "confused." Obviously, when two or more similar measures are being promoted, a voter who is aware that there are distinct measures should be able to tell, by reading the ballot title, which is which. If a voter is unaware of that fact, a ballot title accurately explaining one measure will not avoid that the voter may be "confused" into signing a petition in the belief that he is supporting the other one. If both measures receive enough signatures to appear on the same ballot, their common elements may require such similar explanations that it may be difficult fully to bring out their differences in the space allowed for a ballot title. In such a situation, all that the ballot title can do is to differ sufficiently in wording to draw the voter's attention to the fact that the voter is being offered two distinct measures on the same subject and with similarly stated purposes.

■ Moreover, we note that this requirement of ORS 250.035(2), although binding on the Attorney General, is not itself a standard for this court's judicial review of the title, unless the probability of misidentification and "confusion" is great enough to make the title "insufficient" or "unfair." We conclude that the difference between the Attorney General's captions for these measures avoids that result to the extent possible.

The petitioner has submitted a proposed title; however, since our task is not to find or write a better title than that provided by the Attorney General, but only to test the provided title for insufficiency or unfairness, and we have found neither in this case, there is no need for us to discuss the merits of petitioner's proposed substitute.

We certify to the Secretary of State the title provided by the Attorney General. ORS 250.085(3).