Argued and submitted September 6, ballot title modified October 18, 1983

## TELEDYNE WAH CHANG ALBANY,
*Petitioner,*

*v.*

## PAULUS,
*Respondent,*
MARBET,
*Intervenor.*

(SC 29879)

670 P2d 1021

Richard H. Williams, Portland, argued the cause for petitioner. With him on the petition was Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Margaret Rabin, Assistant Attorney General, Salem, argued the cause for respondent. On the response to the petition were Dave Frohnmayer, Attorney General, William F. Gary, Deputy Attorney General, and Sally Leisure, Special Assistant Attorney General, Salem.

Lloyd K. Marbet, Intervenor, argued the cause.

PER CURIAM

## PER CURIAM

We are called upon to review a ballot title for a proposed initiative measure to amend Oregon's Energy Facility Siting Council's certification requirements as provided in ORS 469.375.[1] Pursuant to ORS 250.035 and 250.065, the

---

[1] The proposed measure amends ORS 469.375 as follows:

"The council shall not issue a site certificate for a waste disposal facility for uranium mine overburden or uranium mill tailings, mill wastes or mill by-product or for radioactive waste or radioactively contaminated containers or receptables used in the transportation, storage, use or application of radioactive material, unless, accompanying its decision it finds:

(1)   The site is:

(a)   Suitable for disposal of such wastes, and the amount **of the wastes** [thereof], intended for disposal at the site;

(b)   **Not located in or adjacent to:**

(A)   **An area determined to be potentially subject to river or creek erosion within the lifetime of the facility;**

(B)   **Within the 500-year flood plain of a river, taking into consideration the area determined to be potentially subject to river or creek erosion within the lifetime of the facility;** (C) **An active fault or an active fault zone;**

(D)   **An area of ancient, recent or active mass movement including land sliding, flow or creep;**

(E)   **An area subject to ocean erosion; or**

(F)   **An area having experienced volcanic activity within the last two million years.**

(2)   There is **no available disposal technology** and no [currently] available alternative site for disposal of such wastes **that would better protect the health, safety and welfare of the public and the environment;**

(3)   The disposal of such wastes and the amount [thereof] **of the wastes,** at the site will be compatible with the regulatory programs of Federal Government for disposal of such wastes;

(4)   The disposal of such wastes, and the amount [thereof] **of the wastes,** at the site will be coordinated with the regulatory programs of adjacent states for disposal of such wastes;

(5)   That following closure of the site, **there will be no release of radioactive materials or radiation from the waste** [radon gas release, gamma radiation levels and radium release to surface or ground waters will not exceed levels referred to in ORS 469.300(17) unless the council finds that lower levels are appropriate];

(6)   That suitable deed restrictions have been placed on the site recognizing the hazard of the material; and

(7)   That, where federal funding for remedial actions is not available, a surety bond in the name of the state has been provided in an amount determined

Attorney General drafted a ballot title consisting of the following:

"ADDS REQUIREMENTS FOR APPROVAL OF RADIOACTIVE WASTE DISPOSAL SITES

"QUESTION: Should the Energy Facility Siting Council be required to consider additional factors before approving a site for the disposal of radioactive wastes?

"EXPLANATION: This measure would add to existing requirements by requiring the Energy Facility Siting Council to find, before approving a site for the disposal of radioactive wastes, that the site is not subject to water erosion, earthquakes, volcanoes, or landslides; that there is no safer choice for such disposal; and that there will be no radioactive release from the waste site."

Petitioner challenges the ballot title as "insufficient and unfair" and proposes the following ballot title:

"MODIFIES REQUIREMENTS FOR DISPOSAL OF WASTES CONTAINING NATURALLY OCCURRING RADIOACTIVITY

"QUESTION:

"Should the requirements for licensing of disposal sites for wastes containing naturally occurring radioactivity be modified?

"EXPLANATION:

"This measure would modify the findings the Energy Facility Siting Council must make before licensing a naturally

---

by the department to be sufficient to cover any costs of closing the site and monitoring it or providing for its security after closure and to secure performance of any site certificate conditions. The bond may be withdrawn when the council finds that:

(a) The radioactive waste has been disposed of at a waste disposal facility for which a site certificate has been issued; and

(b) A fee has been paid to the State of Oregon sufficient for monitoring the site after closure.

(8) If any section, portion, clause or phrase of this act is for any reason held to be invalid or unconstitutional the remaining sections, portions, clauses and phrases shall not be affected but shall remain in full force or effect, and to this end the provisions of this act are severable.

(9) This Act being necessary for the immediate preservation of the public economy, peace, health and safety, an emergency is declared to exist, and this Act will take effect on its passage."

occurring radioactive waste disposal site and would thereby restrict the Council's regulatory powers under existing law to deal with factors affecting site suitability. The modifications would require findings that the site is not subject to water erosion or certain geological occurrences; that there is no better technology or site; and that the wastes will not release radioactivity."

In reviewing ballot title issues, we have said:

"* * * Our role is limited to determining whether the Attorney General's title is a concise and impartial statement of the purpose of the measure, and we are not concerned with whether the petitioner's proposed title may be better or even whether we could devise a better one ourselves. * * *" *Priestley v. Paulus,* 287 Or 141, 145, 597 P2d 829 (1979).

Furthermore, "our task is not to find or write a better title than that provided by the Attorney General, but only to test the provided title for insufficiency or unfairness." *Bartels v. Paulus,* 293 Or 47, 53, 645 P2d 1059 (1982).

■     With the standard of review in mind, we look to petitioner's four contentions. First, petitioner argues that the use of the words "additional" and "add" mischaracterizes the effect of the initiative because they erroneously imply that new requirements are being imposed on the Energy Facility Siting Council rather than mere modification of existing requirements. The proposed measure amends ORS 469.375 and requires the Council to make factual findings concerning (A) river or creek erosion; (B) 500-year flood plains; (C) fault activity; (D) land slides and mass movements; (E) ocean erosion; and (F) volcanic activity.[2] None of the findings is required by the statute as it now reads. Petitioner claims that these facts are currently being considered by the Siting Council and therefore the measure only modifies that statute. Only findings regarding 500-year flood plain and wind and water erosion are currently required, and those findings are mandated by an Oregon Administrative Rule (OAR 345-50-060). The proposed measure adds these and other requirements to the statute. The use of the words "additional" and "add" is sufficient and fair.

---

[2] These are requirements listed in the proposed measure as ORS 469.375(1)(b)(A) to (F).

■ ■ Second, the petitioner criticizes the ballot title for failing to state that the measure reduces the flexibility of the Energy Facility Siting Council; in other words, that the ballot title fails to mention the effect of the measure. As we said in *ACLU v. Paulus,* 282 Or 539, 544, 580 P2d 168 (1978): "Statements about the effects of proposed measures are to be left to public debate; they have no place in ballot titles."

■ ■ Third, petitioner argues that "licensing" would be a more appropriate word to use than "approving" because the use of the latter suggests to voters a lack of continuing regulation over waste disposal sites. We review for insufficiency or unfairness; we do not try to devise a "better" ballot title. *Bartels v. Paulus, supra* at 145. The use of the word "approving" is fair and sufficient.

■ Finally, petitioner contends that the failure to include the phrase "naturally occurring radioactive wastes" misleads voters by suggesting that the new requirements apply to controversial types of radioactive wastes, such as spent nuclear fuel. Because the scope of ORS 469.375 is narrowed by ORS 469.525(1) so that disposal facilities may store only wastes containing "naturally occurring radioactive isotopes," it would be unfair if the ballot title did not reflect that narrowed scope. However, the alternative language proposed by petitioner would in itself be unfair; it potentially implies the radioactive wastes are natural rather than a result of technological processes. Therefore, the narrowed scope necessitated by ORS 469.525(1) is reflected in the modified ballot title below.

We certify to the Secretary of State the following modified ballot title.[3]

### ADDS REQUIREMENTS FOR DISPOSING WASTES CONTAINING NATURALLY OCCURRING RADIOACTIVE ISOTOPES

QUESTION: Should the Energy Facility Siting Council consider additional factors before approving sites for disposing wastes containing naturally occurring radioactive isotopes?

EXPLANATION: This measure would add to existing requirements by requiring the Energy Facility Siting Council

---

[3] *See, Marbet v. Paulus,* 295 Or 769, 670 P2d 1024 (1983), which also modified this ballot title.

to find, before approving a site for the disposal of wastes containing only naturally occurring radioactive isotopes, that the site is not subject to water erosion, earthquakes, volcanoes, or landslides; that there is no safer choice for such disposal; and that there will be no radioactive release from the waste.

Ballot title certified as modified.