Argued and submitted September 30, ballot title certified as modified October 15, reconsideration allowed November 29, 1985
See 300 Or 334, 709 P2d 1086 (1985)

## PORTLAND GENERAL ELECTRIC COMPANY et al,
*Petitioners,*

*v.*

## ROBERTS,
*Respondent.*

(SC S32135)

707 P2d 1229

John R. Faust, Jr., Portland, argued the cause and filed the petition for petitioners. With him on the petition were Schwabe, Williamson, Wyatt, Moore & Roberts, and James W. Durham and Warren Hastings, Portland.

John A. Reuling, Jr., Special Counsel to the Attorney General, Salem, argued the cause and filed the response for respondent. With him on the response were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

PER CURIAM

Lent, J., did not participate in this decision.

## PER CURIAM

This is an original proceeding to review a ballot title. A prospective petition to initiate a state measure[1] was filed with the respondent Secretary of State. Thereafter, pursuant to ORS 250.065, the Attorney General certified to the respondent the following ballot title:

"Prohibits Nuclear Power Operation Until
Permanent Waste Site Licensed.

"Question: (1) Shall all Oregon nuclear power plant operations be prohibited until the federal government licenses a permanent radioactive waste disposal site?

"Explanation: This measure prohibits all Oregon nuclear power plant operation until the Oregon Energy Facility Siting Council finds that a federally licensed high level radioactive waste disposal site is available to immediately accept waste for permanent disposal. Waste retrieval option for reprocessing is not required.

"(2) If legislature declares an emergency need for power not available from other resources, including conservation, temporary suspension or repeal of part (1) of this measure must be referred to voters."

The petitioners contend that the above ballot title certified by the Attorney General to the respondent is "insufficient and is unfair because it fails to disclose" that the only purpose of the proposed initiative measure is "to prohibit generation of electricity for public use from petitioner Portland General Electric Company's Trojan power plant."

---

[1] The operative portion of the proposed initiative measure is as follows:

"SECTION 2. *Conditions for further operation of nuclear fueled thermal power plants.* (a) No nuclear fueled thermal power plant shall be allowed to operate in Oregon until the Energy Facility Siting Council finds that a repository for the disposal of the high level radioactive waste produced by the plant has been licensed by the Federal Government. The repository must be found to provide for the immediate acceptance and terminal disposition of such waste with or without provision for retrieval for reprocessing.

"(b) If the Oregon Legislature declares by law that there is an emergency need for electric power which cannot be obtained from any alternative energy resource including conservation, without violating Section 2(a), then the temporary suspension or repeal of Section 2(a) shall be referred to the voters of this state for their approval or rejection."

The petitioners argue that the language of the proposed initiative is substantially identical to ORS 469.595[2] which provides that no new nuclear plants may be constructed until the Oregon Energy Facility Siting Council determines that a waste disposal facility has been licensed by the federal government. The only difference between ORS 469.595 and the proposed measure is that the statute only applies to new nuclear power plants while the proposed measure, if adopted, will apply to existing plants. Trojan is the only existing plant.

Petitioners further argue that the ballot title is insufficient and unfair because it uses the general phrase "nuclear power operation" which may confuse voters who do not know that the sole purpose of the nuclear power operation at Trojan is to provide electric power for public use.

The petitioners have submitted the following ballot title in lieu of that proposed by the Attorney General:

"Stops Trojan Nuclear Power Electricity Production
Until Waste Site Licensed.

"Question: Shall electricity production from Trojan nuclear power plant be prohibited until federal government licenses a permanent radioactive waste disposal site?

"Explanation: (1) This measure stops electricity production from the Trojan power plant until the Oregon Energy Facility Siting Council finds a federally licensed high level radioactive waste disposal site is available to immediately accept waste for permanent disposal. Waste retrieval option for reprocessing is not required.

"(2) If legislature declares an emergency need for electricity not available from other resources, including conservation, temporary suspension or repeal of part (1) of this measure must be referred to voters."

The Attorney General's brief in this court concedes that the Trojan nuclear power plant produces only electricity

---

[2] ORS 469.595 provides:

"Before issuing a site certificate for a nuclear-fueled thermal power plant, the Energy Facility Siting Council must find that an adequate repository for the disposal of the high-level radioactive waste produced by the plant has been licensed to operate by the appropriate agency of the Federal Government. The repository must provide for the terminal disposition of such waste, with or without provision for retrieval for reprocessing."

and is the only plant in Oregon which will be affected by the proposed measure. The same brief states in part:

"It is irrelevant to the measure's purpose whether one or a dozen such plants would be affected. * * * The measure is broad enough to prohibit operation, but not construction, of any new nuclear power plants in Oregon, until the condition is met. * * *. However, the purpose of the measure is to prevent continued *operation* of nuclear power plants in Oregon, and it is irrelevant to its sponsors that only one exists." (Emphasis in original.)

The Attorney General cites *Teledyne Wah Chang v. Paulus,* 295 Or 762, 767, 670 P2d 1021 (1983), for the proposition that a ballot title is not required to state the effects of the proposed measure—a matter which should be left to public debate. Here we think that the purpose and the effect of the proposed measure are one and the same—to stop the production of electricity at the Trojan nuclear power plant until a waste site is licensed by the Federal government. We hold that the ballot title should so state, "up front." *Priestley/Fadeley v. Paulus,* 296 Or 268, 271, 675 P2d 1048 (1984). But for the Trojan nuclear power plant, there would be no initiative measure.

We amend the Attorney General's ballot title to the extent necessary to inform the voters that the measure makes new law only in requiring suspension of operations at the existing Trojan nuclear power plant. We certify to the Secretary of State the following ballot title:

SUSPENDS TROJAN NUCLEAR POWER
PRODUCTION UNTIL PERMANENT
WASTE SITE LICENSED.

Question: Shall Oregon nuclear electric power operations (now only Trojan plant) be suspended until federal government licenses permanent radioactive waste site?

Explanation: (1) This measure prohibits all Oregon nuclear power plant operation until the Oregon Energy Facility Siting Council finds that a federally licensed high level radioactive waste disposal site is available to immediately accept waste for permanent disposal. Waste retrieval option for reprocessing is not required.

(2)   If legislature declares an emergency need for power not

available from other resources, including conservation, temporary suspension or repeal of part (1) of this measure must be referred to voters.

Ballot title certified as modified.[3]

---

[3] We note that on September 20, 1985, after the petition and response were filed with this court but before oral argument, 1985 Oregon Laws, chapters 405 and 477 became effective. The legislature has changed the test to be applied upon review of ballot titles by this court from one of determining whether the ballot title is insufficient, not concise or unfair to whether the ballot title substantially complies with the governing statutes (ORS 250.035 and 250.039). Because this ballot title proceeding spans both the old and the new tests, we have applied both tests.