Argued and submitted August 20, ballot measure explanatory statement certified as modified August 27, 1986

JUNE,
*Petitioner,*

*v.*

ROBERTS et al,
*Respondents.*

(SC S33122)

724 P2d 267

John R. Faust, Jr., of Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, argued the cause and filed the petition for petitioner.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause pursuant to ORS 180.060(1)(a). With him on the answer to the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

PER CURIAM

## PER CURIAM

This is an original proceeding to review a ballot measure explanatory statement. Pursuant to ORS 251.215, respondents Kafoury,[1] Marbet, Achterman, Frewing and McFarland filed with the respondent Secretary of State a purported explanation of a state initiative measure designated as Ballot Measure No. 14. The full text of the explanatory statement as filed with the Secretary of State is as follows:

"This measure halts the operation of an existing nuclear fueled thermal power plant in Oregon until the Energy Facility Siting Council finds that the Federal Government has licensed a repository for the disposal of the high level radioactive waste produced by the plant. Before allowing a nuclear fueled thermal power plant to resume operating, the Energy Facility Siting Council must find that the repository will accept the high level waste immediately for final disposal. Current law requires the council to make such a finding before allowing the construction or expansion of a thermal nuclear power plant.

"The measure allows the temporary operation of a nuclear fueled thermal power plant before the Federal Government licenses a respository [sic] if:

"1. The Oregon legislature refers to the voters a law declaring an emergency need for power that cannot be obtained from any other energy source, including conservation; and

"2. The voters approve the referendum.

"If a court declares part of the new law invalid, the rest of the law would remain unaffected."

Petitioner contends that the above explanation is insufficient and unclear.

The standard for the voters' pamphlet is that the explanatory statement must be an "impartial, simple and understandable statement explaining the measure and its effect." ORS 251.215(1).

---

[1] On August 25, 1986, John Arum, a board member of Citizens for Responsible Radioactive Waste Disposal, filed a motion to intervene and, with respondent Gregory Kafoury, filed a response to the petition to review the explanatory statement. We denied the motion to intervene, but we accepted and considered the response on behalf of respondent Kafoury.

We find the proposed explanation that "this measure halts the operation of an existing nuclear fueled power plant" inadequate and potentially misleading. The only "existing nuclear fueled thermal power plant in Oregon" is the Trojan plant and the explanation should name it. The phrase, "halts the operation" of the plant, may be deceptive because the only significant operation halted is the production of electricity. The measure has no effect on operations relating to the storage of nuclear waste and, presumably, such storage will continue. The explanation should state that only the production of electricity will be halted.

Pursuant to ORS 251.235, we approve the following explanation submitted by the petitioner as an "impartial, simple and understandable statement explaining the measure and its effect":

"This measure halts the production of electricity at the Trojan nuclear power plant from December 4, 1986, until the Energy Facility Siting Council finds that the Federal government has licensed a high level radioactive waste repository for the disposal of the waste produced by the plant, and that the repository will accept waste immediately for final disposal. The measure changes existing law only in halting production at Trojan; Trojan is Oregon's only nuclear power plant, and current law prohibits construction of new nuclear plants until the Council makes the findings above. Temporary storage of waste at Trojan would continue.

"The measure would allow Trojan to operate temporarily before the Federal government licenses a repository only if the Oregon Legislature refers to the voters a law declaring an emergency need for power that cannot be obtained from any other energy source, including conservation, and the voters approve the referendum.

"If a court declares part of the new law invalid, the rest of the law would remain unaffected."

Ballot measure explanatory statement certified as modified.