Argued and submitted August 20, ballot measure explanatory statement certified as modified August 27, 1986

TELEDYNE WAH CHANG ALBANY,
*Petitioner,*

*v.*

POWELL et al,
*Respondents.*

(S33132)

724 P2d 319

Richard H. Williams, Portland, argued the cause and filed the Petition to Review Explanatory Statement for petitioner. With him on the petition was Spears, Lubersky, Campbell, Bledsoe, Anderson & Young.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause and filed the Answering Memorandum of the Attorney General. With him on the Answering Memorandum were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

PER CURIAM

## PER CURIAM

This is an original proceeding to review the explanatory statement for Ballot Measure 15 prepared for inclusion in the voters' pamphlet for the November 4, 1986 election. The statement was prepared by a committee appointed pursuant to ORS 251.205. The committee filed the statement with the Secretary of State pursuant to ORS 251.255. Petitioner Teledyne Wah Chang Albany (TWCA) seeks review of the statement under ORS 251.235. Some of petitioner's contentions are correct. We conclude this opinion with a modified explanatory statement to be included in the voters' pamphlet.

The committee's explanation must be "an impartial, simple and understandable statement explaining the measure and its effect," not exceeding 500 words. ORS 251.215(1). A petitioner seeking a different statement from the Supreme Court shall state "the reasons the statement * * * is insufficient and unclear." ORS 251.235. That statute then directs the court to review the statement, hear arguments and certify "an explanatory statement" to the Secretary of State.

We take a summary of the court's and committee's role from the Attorney General's brief.

The court must test the statement filed with the Secretary of State against the ORS 251.215(1) requirement that the statement be "impartial, simple and understandable." The requirement in ORS 251.215(1) that the statement explain the measure must be read with the insufficiency ground for challenge under ORS 251.235. Lack of impartiality is not specified as a ground for challenge, but impartiality is a requisite for sufficiency.

The statutes call for the committee to be composed of two proponents of the measure, two opponents of the measure, and a fifth member chosen by the other four (presumably a tie-breaker). See ORS 251.205. The scheme brings the opposing political forces to bear in the development of a statement, on the implicit assumption that this will result in an acceptably politically balanced statement for the voters. If the committee fails to file a statement, Legislative Counsel Committee, which provides professional staff support to the Legislative Assembly, supplies an explanatory statement. ORS 251.225. Changes to the committee's explanatory statements can be proposed by interested persons, and a special hearing is

held by the Secretary of State for this purpose. The committee then considers those suggestions, and can file a revised statement. ORS 251.215.

■ The explanatory statement procedures thus differ markedly from the procedures devised for providing a ballot title. See ORS chapter 250. The legislature has provided for a process by which opposing viewpoints are brought to bear on the statement's drafting, and has provided for a hearing process to allow other interested people to participate. By design, the process is both legislative and political. The court, in its review, should defer to those processes unless the inadequacy of the statement is clear. In reviewing the explanatory statement, the court should not invalidate or modify it unless its insufficiency is beyond reasonable argument.

In reviewing ballot title issues, we have said:

"'* * * Our role is limited to determining whether the Attorney General's title is a concise and impartial statement of the purpose of the measure, and we are not concerned with whether the petitioner's proposed title may be better or even whether we could devise a better one ourselves. * * *." *Priestly v. Paulus*, 287 Or 141, 145, 645 P2d 829 (1979)

Similarly, with respect to explanatory statements for ballot measures, our task is not to write a better statement, but only to determine whether the explanatory statement is a sufficient and clear statement of the measure and its effect.

The text of the measure is set forth in the footnote.[1]

---

[1] The measure provides:

"SECTION 1. Notwithstanding any provision of ORS 469.300(17), as used in ORS 469.300 to 469.570, 469.590 to 469.621, 469.930 and 469.992:

"(1) 'Radioactive waste' means:

"(a) All material which is discarded, unwanted or has no present lawful economic use, and contains mined or refined naturally occurring isotopes, accelerator produced isotopes and by-product material, source material or special nuclear material as those terms are defined in ORS 453.605. The term does not include those radioactive materials identified by the Energy Facility Siting Council as presenting no significant danger to the public health and safety; and

"(b) Wastes generated before June 1, 1981, through an industrial or manufacturing process producing zirconium, hafnium or niobium, which contain more than five picocuries of radium-226 per gram of solid, regardless of quantity or more than 10 microcuries of radium-226

Petitioner contends that the explanatory statement is insufficient and unclear because it: (1) fails to state that the measure only affects TWCA and the zirconium waste it produces; (2) implies that the ballot measure expands the definition of radioactive waste; (3) implies that radioactive waste not presently regulated by the statute to be amended is not subject to regulation by any state agency and (4) fails to explain the significance of the proposed thresholds for zirconium waste.

█ The TWCA facility is the only waste facility containing wastes generated before June 1, 1981, that is said to be controlled by the measure. Petitioner and the Attorney General[2] agree that the explanatory statement fails to state that

---

activity, regardless of concentration.

"(2) 'Radioactive waste' includes uranium mine overburden or uranium mill tailings, mill wastes or mill by-product materials as those terms are defined in Title 42, United States Code, section 2014, on June 25, 1979.

"SECTION 2. ORS 469.360 is amended to read:

"469.360. The council shall study each site application and may commission an independent study of any aspect of the proposed energy facility. The full cost of the study shall be paid from the applicant's fee paid under ORS 469.420(2). [*However,*] if costs of the study exceed the fee paid under ORS 469.420, the applicant must [*agree to pay any excess costs before they are incurred and must*] pay such costs after they are incurred. If the costs are less than the fee paid, the excess shall be refunded to the applicant. Expenses incurred for site studies, other than those incurred for studies authorized by this section, are the sole responsibility of the applicant.

"SECTION 3. If any section, portion, clause or phrase of this Act is for any reason held to be invalid or unconstitutional, the remaining sections, portions, clauses and phrases shall not be affected but shall remain in full force and effect, and to this end the provisions of this Act are severable."

[2] We note the procedural posture of the Attorney General. He opens his answering memorandum with this statement:

"The Secretary of State has not been named as a respondent in this case, and does not choose to appear. It is less than clear that the committee appointed to draft the challenged explanatory statement is a public body which the Attorney General may represent pursuant to ORS 180.060. Nevertheless the Attorney General chooses to appear pursuant to ORS 180.060(1)(c) to represent and defend the interests of the State of Oregon in the integrity of the process by which voters' pamphlet explanatory statements are prepared, and in achieving certification of an explanatory statement in this case which is accurate and adequate to inform the voters."

Our rules provide that in this type of case the citizens' committee "shall be designated 'Respondent' ", ORAP 15.05(,2) and that "[t]he Attorney General, on behalf of the respondent, shall be allowed * * * to file an answering memorandum." ORAP 15.05(6). One of the parties, Lloyd Marbet, filed a motion to appear and argue this case. (We received the motion on the day of oral argument and first became aware

its sole immediate effect would be to close down a waste facility operated by TWCA and to require removal of all radioactive deposits therein. Because the TWCA facility is the only facility affected by the measure, it is appropriate so to identify it. *June v. Roberts,* 301 Or 586, 724 P2d 267 (1986). *Compare Portland General Electric v. Roberts,* 300 Or 148, 152, 709 P2d 1086 (court amended ballot title to inform voters that the proposed law affected only the Trojan nuclear power plant), *vacated,* 300 Or 334, 700 P2d 1086 (1985).

■     The committee's failure to state this effect of the measure renders it insufficient. However, the alternative language proposed by the petitioner is unduly repetitious and not entirely accurate. The effect of the measure is reflected in the modified language included below.

Petitioner's second contention is that the explanatory statement implies that zirconium wastes described in the measure are not considered radioactive under present law and that the measure will extend present law to regulate such wastes. Petitioner argues that this implication is misleading because it has not yet been determined whether TWCA's waste is radioactive under present law.

Present law exempts from the definition of radioactive waste such waste identified by the Energy Facility Siting Council (Council) "as presenting no significant danger to public health and safety." ORS 469.300(17)(a). The proposed measure retains the Council's ability to exempt certain waste, but specifically includes zirconium waste of the type produced by TWCA within the definition of radioactive waste without regard to the Council's rules.

Petitioner contends that it would be more accurate to state that the measure "amends" present law rather than "expands" it as stated in the explanatory statement. The explanatory statement adequately states the measure's practical effect, which is to regulate described zirconium wastes not presently regulated by the Council under ORS 469.300 (17)(a).

of the motion during oral argument.)

We do not decide whether the appearance of the Attorney General under ORS 180.060(1)(c) is permissible or proper. We note the problem and our hope that the uncertainty can be resolved by amendment of the statutes or the rule.

■      Petitioner's third contention concerns the portion of the explanatory statement which states, in reference to the materials listed by the Council as posing no significant danger to the public health and safety, that "[m]aterials so listed will not be regulated as radioactive waste by the Council." Petitioner asserts that this is misleading as it implies that no state agency will regulate radioactive waste which falls below the threshold for regulation promulgated by the Council. Petitioner proposes the following additional sentence: "Radioactive materials not regulated as wastes by the Council are subject to regulation by the Oregon State Health Division."

The explanatory statement correctly states that radioactive materials which pose no significant danger to public health and safety will not be regulated as radioactive waste by the Council. Whether or to what extent such wastes would be regulated by other units of government is not apparent from the measure. The better course is not to attempt to explain the application of other laws that may or may not be affected by the measure.

5.      Petitioner's last contention is that the explanatory statement does not explain the significance of the measure's thresholds for zirconium wastes — five picocuries and 10 microcuries — and fails to place the thresholds within a context which would permit a voter to evaluate the risk posed by such waste. Petitioner proposes that such a context would be provided by including the example of the granite facing upon a well known building in Portland that assertedly emits 33 picocuries of radium 226 per gram, as compared to the measure's threshold for zirconium waste of five picocuries per gram or a total of ten microcuries regardless of concentration.

The measure's picocuries and microcuries standards are with specific reference only to specified industrial wastes generated before June 1, 1981. Though we share the Attorney General's opinion that this language "will be meaningless to the overwhelming majority of voters," the language is in the measure, and is thus appropriately included in the explanation. Comparing the radioactivity in a granite building that might not be subject to the measure, to industrial wastes which are controlled by the measure, does little to enlighten. Such matters better are left to argument by the proponents and opponents of the measure in the political process.

We certify the explanatory statement that follows this opinion. Explanatory statement certified to the Secretary of State.

## MEASURE NO. 15

SUPERSEDES "RADIOACTIVE WASTE" DEFINITION; CHANGES ENERGY FACILITY STUDY PAYMENT PROCEDURE

Submitted to the Electorate of Oregon by Initiative Petition to be voted on at the General Election, November 4, 1986.

## EXPLANATION

Certified by the Supreme Court pursuant to ORS 251.235.

The Oregon Energy Facility Siting Council (Council) is authorized to regulate certain radioactive wastes which are now defined by law. This measure amends the present definition of radioactive waste in several respects.

The Council previously had ruled certain radioactive materials posed no significant danger to public health and safety. The present law refers to this Council ruling. This measure deletes the reference in the present law to this ruling. However, the measure provides that the Council can continue to list radioactive materials which pose no significant danger to the public health and safety. Materials so listed will not be regulated as radioactive waste by the Council.

The measure expands the definition of radioactive waste as contained in the present law to include waste generated before June 1, 1981, through an industrial or manufacturing process producing zirconium, hafnium or niobium, which contains more than five picocuries of radium — 226 per gram of solid, regardless of quantity or more than 10 microcuries of radium — 226 activity, regardless of concentration.

The measure declares that industrial wastes produced before June 1981 are radioactive wastes. Teledyne Wah Chang Albany is the only entity in Oregon which engaged in the production of zirconium, hafnium or niobium before 1981.

The radioactive wastes of other Oregon entities, except uranium wastes described below, would be judged as to whether they pose a significant danger to the public health and safety according to the Council's listing described above.

A curie is the unit used to measure radioactivity. A picocurie is one-trillionth of a curie. A microcurie is millionth of a curie.

The measure also enlarges the definition of radioactive waste by providing that radioactive waste includes uranium mine overburden or uranium mill tailings, mill wastes or mill by-product materials as those terms are defined in federal law.

Present law provides that when an applicant applies to the Council for a site application for a proposed energy facility the Council may order an independent study of any aspect of the facility. ("Energy facility" includes power generating plants, large solar facilities, high voltage transmission lines, synthetic fuel plants and disposal facilities for radioactive waste, among other things.)

Present law provides that the full cost of such a study shall be paid from the applicant's fee and if the cost of the study exceeds the amount of that fee the applicant must agree to pay any excess cost.

The measure deletes the requirement that the applicant must agree to pay and provides that the applicant must pay.

The measure also provides that if a court declares any part of the measure unconstitutional the remaining part shall not be affected but remain in full force and effect.